Joseph J. Schallerer v. Commissioner.
Schallerer v. Commissioner
Docket No. 24175.
United States Tax Court
1952 Tax Ct. Memo LEXIS 299; 11 T.C.M. (CCH) 210; T.C.M. (RIA) 52065; March 7, 1952
*299 Held, petitioner and the two trusts created by him for the benefit of his wife and daughter did not really and truly intend, in good faith, to join together in carrying on the business of the Calumet Pattern Works as partners. Isaac I. Bender, Esq., and Lester Witte, C.P.A., 134 S. LaSalle St., Chicago 3, Ill., for the petitioner. Harold H. Hart, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion LEMIRE, Judge: Petitioner seeks a redetermination of deficiencies in income tax for the years 1943, 1944, 1945 and 1946, in the respective amounts of $20,872.27, $24,761.32, $20,524.08 and $22,564.49. The only contested issue is whether the respondent properly determined that the net income of a business conducted under the name of Calumet Pattern Works, adjusted to a calendar year basis, was taxable to petitioner for the years 1943 to 1946, inclusive. The following issues were disposed of by oral stipulation at the trial of this proceeding: 1. Petitioner concedes that the respondent did not err in increasing his income by the following amounts charged to automobile expense on the books of Calumet Pattern Works: $750 for 1943, $900 for 1944, *300 $900 for 1945 and $750 for 1946. 2. That, of the amount of $322.36 claimed as a deduction for personal property taxes for the taxable year 1943, the amount of $247.75 is allowable. 3. That, of the amount of $498 claimed for depreciation of a flat building in each of the years 1943, 1944, 1945 and 1946, the amount of $249 is allowable as depreciation deduction for each of such years. 4. Petitioner concedes that the respondent did not err in disallowing the amount of $209.64 claimed as a deduction in 1944, representing real estate tax paid. 5. Respondent concedes that petitioner is entitled to a deduction for the year 1944 of the amount of $403, representing roof repair of flat building. A partial stipulation of facts was filed, which facts are found accordingly and are incorporated herein by reference. Findings of Fact Petitioner resides in Chicago, Illinois, and he filed his income tax returns for the periods involved with the collector of internal revenue for the first district of Illinois. During the taxable years petitioner was married and living with his wife, Anna J. Schallerer, and his only child, Grace E. Schallerer. Petitioner and his wife are approximately 63 *301 years of age and his daughter is 36. In 1920 petitioner and William J. Flynn formed a partnership to engage in the manufacture of patterns for the iron and steel industries, under the name of Calumet Pattern Works. Both partners were to perform personal services and the profits and losses were to be divided equally. On December 15, 1930, an agreement was executed between petitioner, Flynn and Chicago Title and Trust Company, reciting that petitioner and Flynn were engaged in business in Chicago as equal partners; that each partner desired, in case of the death of either, to have his share of the partnership liquidated solely as provided in said agreement; and that the partnership had insured the life of each partner in the face amount of $10,000, designating the Chicago Title and Trust Company as beneficiary trustee in each policy. Under this agreement, upon the death of one partner the survivor was entitled to acquire the interest of the deceased partner at book value, except the items appearing on the books at cost, which should be valued at market. It was further provided that the proceeds of the insurance policy should be paid to the deceased partner's estate and applied against *302 the purchase price, and if such proceeds were less than the value of the deceased partner's liquidating interest, the surviving partner should pay the difference in cash or notes. William J. Flynn died on March 3, 1943. Within a week petitioner agreed with Flynn's widow to purchase the partnership assets at an agreed price of $54,915.13 and the conveyance of two vacant lots having a total book value of $3,382.40. The formal agreement, executed on June 15, 1943, provided that the $54,915.13 was to be paid as follows: $3,500 advanced to pay the March 15 installment of personal income tax of decedent; $3,456.09 to pay the June 15 installment; $11,543.91 in cash; $5,000 in U.S. Treasury notes and $20,000 in notes to the Chicago Title and Trust Company as trustee for the Flynn estate. The balance was by credit of the $11,415.13 received by the trustee as the proceeds of the insurance policy on Flynn's life. In payment of the above amounts, petitioner immediately turned over to Flynn's estate, out of the assets of the dissolved partnership, the following assets: $5,000 in Treasury notes; check of dissolved partnership for $5,758.28; and cash of $3,500 to pay Flynn's March 15, 1943, income *303 tax installment. Petitioner then obligated the new business, conducted as Calumet Pattern Works, for the amount of $29,241.72. Petitioner personally withdrew from the assets of the dissolved partnership the land and building erected in 1940, having a depreciated book value as of March 2, 1943, of $32,082.04. The balance sheet of the new business conducted as Calumet Pattern Works, as shown by book entries as of March 3, 1943, is as follows: ASSETS
Cash
$38,032.35
Accounts receivable
2,240.00
Notes receivable
1,362.02
Inventory
4,000.10
U.S. Treasury tax notes
5,000.00
Stocks and real estate
5,072.12
Machinery and equipment (net)
1,758.92
Truck (net)
479.16
TOTAL ASSETS
$57,944.67
LIABILITIES
Accounts payable and accruals
$ 1,720.94
Mrs. Wm. J. Flynn
29,241.72
Total liabilities
$30,962.66
CAPITAL ACCOUNTS
Joseph J. Schallerer
$12,141.91
Charles Murphy, et al. Trustees of
Trust "A"
12,141.90
Trust "B"
2,698.20
Total capital
26,982.01
TOTAL LIABILITIES AND CAPITAL ACCOUNTS
$57,944.67
On March 12, 1943, petitioner executed two separate trusts designated "A" and "B". The primary beneficiary in Trust *304 "A" was his wife, and in "B", his daughter. Charles Murphy was named a trustee with the daughter in Trust "A", and with the wife in Trust "B". Successor trustees were also named, with the right of the primary beneficiary to select other trustees in the event the successor trustees, or either of them, refused to act. He transferred to Trust "A" an undivided 45/100 interest in the assets of the Calumet Pattern Works (except real estate and chattels real), and to Trust "B" a 10/100 undivided interest. The trustees were given broad powers, including the power to carry on the business enterprise of which the trust corpus was a part, either alone or as a copartner with any other person or corporation. The balance of the trust income, after taxes and administrative expenses, was to be paid to the beneficiaries in quarterly installments, except that the first installment was not to become due and payable before three months after the income of the five preceding calendar years had been ascertained. In the event the beneficiary predeceased the petitioner, the corpus, but not the undistributed income, was to immediately revert to the petitioner. The corpus and undistributed income of Trust "A", *305 upon the death of petitioner, was to be divided into as many portions as there were years in the life expectancy of Anna J. Schallerer at that time. One portion, together with the income of the trust estate, was to be distributed to the wife annually during her life, and upon her death to petitioner's daughter or her issue. The corpus and undistributed income of Trust "B", upon the death of petitioner, was to be divided into 240 shares. One share, together with the income, was to be distributed to the daughter monthly during her life. Upon the death of the daughter, the undistributed balance was to go as appointed in her will and, in default of appointment, to her issue then 21 years of age, or accumulated until such issue reached the age of 21. In the event of no issue surviving, then to petitioner's wife, if living, and if deceased, to the then heirs-at-law of petitioner. Each trust contained a spendthrift clause. Each of the trusts could be terminated by the primary beneficiary with the consent of the trustees, and in that case the entire corpus and undistributed income would go to the beneficiary immediately. A partnership agreement dated March 19, 1943, was executed by petitioner *306 and the respective trustees of Trust "A" and Trust "B", to commence on that date and to continue for a period of ten years unless sooner dissolved as provided therein. It recited that the parties were the sole owners of the Calumet Pattern Works, with undivided interests as follows: petitioner, 45 per cent; Trust "A", 45 per cent; and Trust "B", 10 per cent. The agreement, inter alia, provided that the profits and losses should be shared in proportion to the capital contribution of each partner; and that a reasonable salary be paid to each active partner. Petitioner, during the taxable years, had complete management of the business. Between 38 and 40 skilled pattern makers were employed who received annual salaries, with overtime, of approximately $5,000 each. Petitioner drew no salary. Petitioner's daughter, Grace, continued to be employed in the in the business. She was paid as an ordinary employee and her salary was not considered in any way in computing the income to which Trust "B" was entitled. Trustees Charles Murphy, an insurance man, and Anna J. Schallerer, petitioner's wife, performed no services for the Calumet Pattern Works and received no salary from the business. *307 Partnership returns were filed on the basis of a fiscal year ended February 28, showing the respective distributable share of each partner. In determining the deficiencies, the respondent taxed all the income of the Calumet Pattern Works, adjusted to a calendar year basis, to petitioner. During the taxable years, petitioner and the trustees of Trusts "A" and "B", or the primary beneficiaries thereof, did not really and truly intend, in good faith, to join together in carrying on the business of Calumet Pattern Works as partners. Opinion The primary question is whether the respondent erred in holding that the business of Calumet Pattern Works was not, during the taxable years, a bona fide partnership for federal tax purposes. Petitioner's contention is that since he created two valid trusts, and since a trust may legally enter into a partnership agreement, the income allocable to the capital contributions by the trusts may not be taxed to him. . We think the issue may not be so limited, and involves a factual determination of whether, in the light of all the facts and circumstances, the parties, in good faith and acting with a business *308 purpose, intended to join together in the conduct of a business partnership. . The partnership agreement provides for a general and not a limited partnership. However, the testimony of the witnesses clearly indicates that the trustees or the beneficiaries of the trusts were not intended to render managerial or vital services, and in fact did not render such services. Petitioner continued to assume full management of the business and everything was done under his supervision and control. The partnership agreement provided that the active partners should receivea reasonable salary, Petitioner received no salary, thus contributing a part of his valuable services to the benefit of the trust estates. Petitioner's daughter, a trustee-beneficiary, continued to render services of a clerical nature which she had previously rendered the dissolved partnership. Her services were not contributed as a trustee-partner. She was paid as an ordinary employee and her salary was so treated on the books of the partnership. The gifts of an undivided interest in the new business to each of the two trusts were not complete, since the corpus was to revert *309 to the petitioner in the event the primary beneficiary predeceased him. The income was not to be presently distributed, but was to be accumulated and paid within three months after the income for the five preceding years had been ascertained. Petitioner testified that his purpose in creating the trusts to which he transferred a 55/100 interest in the business (excepting real estate and chattel real) was to give his family control in the event of his death. There is no suggestion of any purpose connected with the business. The only factual element here present indicating the existence of an intention to conduct a partnership business is the capital interest transferred by the petitioner to the two trusts. In , affd., , we held that mere legal title to capital acquired by gift is not alone sufficient to establish a bona fide intention to conduct a business partnership within the doctrine of the Cullbertson case, supra. The economic substance and realities of the facts and circumstances here shown indicate that the formation of the partnership with the trusts as partners had no effect upon the petitioner's *310 business except in so far as the distribution of profits is concerned. In the light of all the facts and circumstances surrounding the formation of the trusts, the provisions thereof, the partnership agreement and the conduct of the parties in respect thereto, as well as the testimony of the witnesses, we conclude that the parties did not, in good faith and acting with a business purpose, intend to join together in the present conduct of a business partnership, and have so found as an ultimate fact. We, therefore, sustain the respondent in taxing to petitioner the entire net income of the business conducted under the name of Calumet Pattern Works in the taxable years involved, adjusted on a calendar year basis. Effect will be given to the stipulated figures as to the net income and to the other stipulated adjustments, in the recomputation under Rule 50. Decision will be entered under Rule 50.